CASE 106—ACTION BY F. T. FOX AGAINST THE BOARD OF SINKING FUND COMMISSIONERS OF LOUISVILLE, TO RECOVER FEES CLAIMED TO HAVE BEEN EARNED BY THE COLLECTION OF A CLAIM AGAINST THE GOVERNMENT. MRS. WILLIS, AS EXECUTRIX OF A. S. WILLIS, INTERVENES AND CLAIMS PART OF THE FEE UNDER A CONTRACT WITH PLAINTIFF. THE BOARD IS PERMITTED TO PAY INTO COURT THE SUM SUED FOR.—FEB. 25.

# Fox v. Willis and Others.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT AWARDING MRS. WILLIS PART OF THE FUND AND PLAINTIFF APPEALS REVERSED.

CLAIMS AGAINST THE GOVERNMENT—COLLECTION—FEE—MINISTER TO FOREIGN COUNTRY—ATTORNEY'S FEE.

Held: 1. Under Rev. St. U. S., section 5498 [U. S. Comp. St., 1901, p. 3707], prohibiting a person holding a place of trust or profit under the government from acting as agent for the pros-

Fox v. Willis and Others.

ecution of a claim against the United States, a person who has entered into a contract with another to assist him in prosecuting the claims of a city against the government, but who shortly afterwards accepts the post of minister to a foreign country, and holds such post during the prosecution of the claim, can not recover any fee for the prosecution of the claim.

2. Where a minister to a foreign country had, before taking up his duties, entered into a contract with another to assist in the collection of certain claims against the government, which were prosecuted during his term of office, he can, upon payment of the claims, recover from his associate any attorney fees and costs advanced for his benefit, though he can not recover any fee for services.

3. An attorney fee of $500 certain and $1,000 additional in case of success for the collection of a claim of $19,017.05 by suit, is reasonable.

PIRTLE & TRABUE, HAZELRIGG & CHENAULT, AND O'NEAL & O'NEAL, FOR APPELLANT.

(No briefs for appellant.)

J. L. CLEMMONS, ATTORNEY FOR APPELLEES.

On March 18, 1890, the sinking fund commissioners of the city of Louisville employed appellant, F. T. Fox and Hon. Albert Willis, jointly, to prosecute and collect a claim against the United States government for income tax illegally collected by the government from said city, and authorized their president, W. R. Ray, to sign a contract with them agreeing to pay them one-half of the sum recovered; the said Fox and Willis to pay all the expenses of the litigation. They went to work at once, secured an act of congress waiving the statute of limitations and directing the secretary of the treasury to audit and settle said claim, and the result was the allowance of $42,000 to the city of Louisville as a refund of taxes paid on dividends. But, by oversight the taxes paid on the interest on some bonds were not included in the $42,000, and another proceeding was instituted at the instance of the commissioners upon the same terms to recover $31,349 on this claim. The treasury department decided that the claim was just, but the comptroller of the treasury demanded that it should be credited by the sum of $17,633 which had been improperly included in the $42,000, that had been allowed. Finally the government paid the sum of $13,735, reserving the $17,633 and refused to pay any more. An appeal was taken to the court of claims, and finally to the supreme court, resulting in a recovery of $19,017 including interest and costs.

The commissioners notified the executrix of Willis and Fox, that they had the money and were ready to turn over one-half to them as their fee according to contract, the half being $9,508. This constitutes the fund in court over which the present controversy has arisen.

Fox called on the commissioners and demanded the whole of the fund, denying that Willis owned any part of it. The commissioners refused to comply with his demand, whereupon Fox brought this action for the whole of the fund.

In the meantime Willis had been sent as minister to Hawaii and with the approval of Fox employed Judge Alonzo Hart, a lawyer of eminence in the city of Washington, to represent him in the further prosecution of these cases, and Hart had control for both Willis and Fox for about four years.

In October, 1893, Willis and Fox had an adjustment of their accounts as shown by the writing on file marked G. which shows that if the full amount of all the four cases was received, Willis should have $11,957 and Fox should have $7,250 and if less than the whole amount should be collected it should be settled in the same proportion, the difference being on account of Fox's indebtedness to Willis for advances previous to that date; since which time Willis advanced $2,000, one-half of which became due to him by Fox as shown by itemized account on file marked F.

I have written this brief in great haste because I did not know the record had been carried up until twenty-four hours ago, having retired from active practice on account of my age (eighty-eight years). I feel somewhat embarrassed by being both counsel and witness in this case, but Mrs. Willis being my stepdaughter had the right to command my services as attorney, while my familiarity with the facts rendered my testimony indispensable.

OPINION OF THE COURT BY JUDGE NUNN—REVERSING.

The substance of the facts of this case are that in the year 1890 the Board of Sinking Fund Commissioners of the city of Louisville, Ky., by resolution of the board, renewed the contract with F. T. Fox and A. S. Willis that it had, in 1874, made with F. T. Fox and S. H. Wires, to recover from the United States Government internal revenue tax wrongfully collected from the city—Wires having died. By the contract, Fox and Willis were to receive a sum equal

Fox v. Willis and Others.

to one-half of any sum they might recover; they to pay all costs and their expenses. Fox had other like contracts for the recovery of claims against the Government, made with the State of Kentucky and Logan and Simpson counties (but they were only to receive on claims of counties a fee equal to 20 per cent. of the amount collected) in which contracts he procured the services of A. S. Willis, and agreed with him that they would divide the fees equally after deducting expenses. Under this arrangement, they prosecuted the claims, and on the 16th day of March, 1891, they collected from the Government $42,514.03 on the Louisville claim. One-half of this sum—their fee—was divided between them on the basis of their agreement; Willis receiving the sum of $11,257, and Fox $10,000. On the 6th of March, 1894, they received further on their Louisville claim the sum of $13,725.17, $9,533.54 on their Logan county claim, and $1,296.02 on their Simpson county claim. Their fees on these collections were adjusted and settled between Fox and J. L. Clemmons, as agent and attorney for Willis, who was then in Hawaii. Fox received $3,435.58 and Willis $5,658. This settlement was made on the 6th day of March, 1894, and the basis for same was a settlement made by Fox and Willis on the 20th of October, 1893. The agreement is in words and figures, to-wit:

"Louisville, Ky., 20th Oct., 1893. It is agreed by and between Albert S. Willis and F. T. Fox that in fees to be received from the city of Louisville, Simpson Co. and Logan Co., Ky., and the State of Kentucky, said Fox is to receive $7,250.00 and said Willis $11,957.04; but subject to this addition that if said Fox can get an allowance for expenses from Simpson county, the same is to be equally divided between them; and if the full claim for the State of Kentucky, then the additional fee for same is to be equally

divided between them, the additional sum for said State being supposed to be $2,117.91. Said Willis is to pay the fee due Judge Hart of Washington. The above settlement is based on the payment of the claims aforementioned and is to be prorated if any of the claims is rejected. This settlement is in lieu of all others.

"F. T. Fox.    Albert S. Willis.

"In the event said Fox can get from Logan county any allowance over the 20 per cent., now agreed to be paid by said county, the same is to be equally divided between them. 20th October, 1893.          F. T. Fox.    Albert S. Willis."

When these last sums were paid by the Government, it, by its officials, refused to pay the city of Louisville about $17,000, which had been allowed when the last-mentioned claims were allowed; giving as a reason that it had by some error or mistake, when it paid the $42,514, paid $17,000 too much. And in March, 1894, an action was brought to recover this sum. The Board of Sinking Fund Commissioners were successful in the lower court, and the Government appealed to the Supreme Court, and lost again, and on the 20th of July, 1898, paid the sum, with its interest, to-wit, $19,017.05, to the Board of Sinking Fund Commissioners of Louisville, Ky.; and on the 5th day of October, 1898, appellant, F. T. Fox, sued the commissioners for one-half thereof, claiming that he was entitled to it in his own right. The commissioners answered, and admitted that they held the money, but that Willis' executrix was claiming a part of same as a fee for A. S. Willis, under the resolution of the board employing Fox and Willis in the year 1890; and also stating that they, as such board, had been summoned as garnishees in actions by the Louisville Banking Company against Fox and G. W. McCready against Fox, and that the Louisville Trust Company had given them notice of a

written assignment by Fox to it of his fee in said fund; and asked to be allowed to pay the fund in court, and for the court to adjudge to whom the fund belonged; and under order of court said fund of $9,508.57 was paid in court. Mrs. Willis, as executrix of A. S. Willis, answered, and controverted plaintiff's statement that he was entitled to the whole fee, and alleged that she, as such executrix, was entitled to a part of the fee, to be divided in the proportions and under the contract of Fox and Willis made October 20, 1893; and also alleging that Willis and she, as executrix, had advanced to Alphonso Hart his fee of $1,500. to prosecute this last action to a judgment, and had paid $385 costs and claims for printing in and about the proper prosecution of the claims, and asked the court to adjudge to her from the fund a sufficient amount to pay same.   The appellant replied to appellee's answer, and denied her claim, and stated that A. S. Willis, in the fall of 1893, was appointed by the President of the United States a minister to Hawaii, and that he accepted this appointment; that under section 5498 of the Statutes of the United States (U. S. Comp. St., 1901, p. 3707) Willis was prohibited from prosecuting any claim against the Government while holding such office, and that he held same until his death, which occurred in the year 1897; and that also he prosecuted the claim in his own name and right with the assistance of Hart, and that he had no knowledge or information that Willis took any part in the prosecution of the claim, or that he paid any costs of Hart's attorney fee, but says that he himself did not pay Hart, nor any costs except $40.   The lower court adjudged that Willis' executrix take $6,924.35 of the fund, to which judgment appellant excepted, and the case is here on appeal.

The first or main question to be determined is can the executrix of A. S. Willis recover any part of the $9,508 as fee for the prosecution of the action to recover a claim against the United States after Willis became minister to Hawaii? Section 5498, Rev. St. U. S. (U. S. Comp. St., 1901, p. 3707) is as follows: "Every officer of the United States, or any person holding any place of trust or profit, or discharging any official function under or in connection with any executive department of the Government of the United States, or under the Senate or House of Representatives of the United States, who acts as an agent or attorney for prosecuting any claim against the United States, or in any manner or by any means, otherwise than in the discharge of his proper official duties, aids or assists in the prosecution or support of any such claim, or receives any gratuity, or any share of or interest in any claim from any claimant against the United States, with intent to aid or assist, or in consideration of having aided or assisted, in the prosecution of such claim, shall pay a fine of not more than five thousand dollars, or suffer imprisonment not more than one year, or both." In 2d Edition of American & English Encyclopedia of Law, page 933, this language is found: "That principle of law which holds that no one can lawfully contract to do that which has a tendency to be injurious to the public or against public good is well settled, and may be termed the policy of the law. And courts have not hesitated to declare illegal and unenforceable contracts which they have considered against the public policy." Again, on page 939, it is said: "In some early cases a distinction was taken in reference to the validity and enforcement of contracts between acts *mala prohibita* and acts *mala in se,* but in the words of an eminent jurist this 'has long since been exploded.' It was not founded upon any

sound principle, for it is equally unfit that a man should be allowed to take advantage of what the laws says he ought not to do, whether the thing be prohibited because it is against good morals, or whether it be prohibited because it is against the interest of the State. When the statute expressly provides that a violation thereof shall be a misdemeanor, it would seem clear that it was the intention of the Legislature to render illegal contracts violating the statute." The same principles are stated in the case of Steele v. Curle, 4 Dana, 384. In the case of Lindsay v. Rutherford, 17 B. Mon., 247, the court said: "A contract is void if prohibited by statute, though the statute only inflicts a penalty; because such a penalty implies a prohibition. If the contract be illegal, it makes no difference, in point of law, whether the statute which makes it so has in view the protection of the revenue or any other object. The question to be considered is, does the statute prohibit the contract attempted to be enforced?" In case of Ex parte Curtis, 106 U. S., 371, 27 L. Ed., 232, Chief Justice Waite reviewed the legislation of Congress on the subject of the disability of officers of the United States in matters of claims against the United States from the beginning of the Government, and referred to section 5498 of the Statutes (U. S. Comp. St., 1901, p. 3707) as follows: "Which prohibits every officer of the United States or person holding any place of trust, profit or discharging any official function under or in connection with any executive department of the Government, from acting as an agent or attorney for the prosecution of any claim against the United States." It is admitted that A. S. Willis held the position of minister to Hawaii from this Government from the last of the year 1893, until his death, in 1897, and his case comes within the principles

above referred to. The contract is in fact prohibited by section 5498 of the Revised Statutes of the United States, though the statutes only inflict a penalty, because the penalty implies a prohibition. If Mr. Willis, while an officer of the United States, as attorney, had prosecuted any claim against the United States, or assisted in the prosecution of such claim, he was liable to a fine of not more than $5,000 or imprisonment for not more than one year, or both; and, the penalty for doing the act being imposed, the act itself was prohibited by law. The court is of the opinion that his executrix is not entitled to recover any part of the fund as a fee for the prosecution of the claim. But we are of the opinion that out of said fund Willis' estate should be reimbursed for the money advanced for the benefit of appellant in the prosecution of the claim, and for the amount due Willis from appellant, as shown by their settlement of October 20, 1893, $4,707.04, less the amount paid him as on their settlement in March, 1894, $2,222.42, with 6 per cent. interest to the date the sinking fund commissioners paid the fund into court, to-wit, October 4, 1898. The contract of Fox and Willis of date of October 20, 1893, and the settlement of March, 1894, show that at the last date, and after the completion of the settlement, appellant was indebted to Willis in the sum of $2,484.62, and the proof shows that Willis paid Hart, for appellant, on the 4th of October, 1894, the sum of $500. The record shows parties agree that statement in contract of 20th of October, 1893, "that Willis is to pay Hart," had no reference to $1,500 paid Hart, but referred to other and premium fee, and paid for him for printing a brief, August 13, 1894, the sum of $60, and March 12, 1896, $120, and November 1, 1895, J. P. Morton account, $180, and costs paid for appellant December 11, 1897, by Willis' executrix, $25, and paid Judge Hart balance

of fee on August 20, 1898, $1,000—making, with interest, the sum of $5,244.76, the amount which the court should have adjudged to Willis' executrix. The appellant should not complain at the amount of the fee to Hart. A fee for the collection of a claim of $19,017.05 by suit, when the claim was litigated for a fee of $500 certain and $1,000 additional in case of success, seems to us a not unreasonable fee, and we are satisfied that the contract made with Judge Hart by Clemmons on such terms proved to be very beneficial to appellant.

For the above reasons, the case is reversed, and the cause remanded for further proceedings consistent herewith.

Response by Judge Nunn to application to modify opinion April 17, 1903.

The appellant asks this court to modify the opinion herein to the extent that he be not charged the $180, the amount paid to J. P. Morton & Co., and the amount of $2,222.42; appellant claiming that he has paid and settled these sums. We have again examined the record, and find that appellant is mistaken. It appears from the record that Mrs. Willis, as executrix, paid the Morton & Co. claim. Appellant is mistaken when he states that this court, in the opinion, charged him with $2,222.42. On the contrary, he is credited with it, and properly credited, as shown by the record and receipt of J. L. Clemmons. The settlement of October 20, 1893, and the deposition of Mr. Fox in answer to question 41, show that Fox at that time was indebted to Willis in the sum of $4,707.04, and in the settlement of March 6, 1894, Fox paid on that debt the sum of $2,222.42, leaving a balance due on that matter of $2,484.62, which sum is charged to him in the opinion.

Appellant also moved the court to adjudge him 10 per cent.

950          KENTUCKY REPORTS.          [Vol. 114

damages on $6,924.35, the amount adjudged to appellee in the lower court, and alleged to have been withdrawn by her. We are not aware of any law authorizing this court, on the reversal of a case, to assess such damages. If appellee, under the judgment of the lower court, withdrew from the court the sum of $6,924.35, and did not return it, then she received $1,679.59 more than she was entitled to, as shown by the opinion of this court; and on the return of this case the lower court should order her to pay into court the sum of $1,679.59, with 6 per cent. interest from the time she received it until she pays it.

Petition for rehearing by appellee overruled.